No. 21,446.

KATE C. McKEOWN, *Appellant,* v. FRANK CARROLL, as Executor, etc., of Cornelius Kelly, et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. CONTRACT—*To Make Plaintiff an Heir—Insufficient Evidence.* The evidence did not prove the contract alleged in the plaintiff's petition.

2. SAME—*Findings—Supported by the Evidence.* The findings of fact made by the trial court were supported by the evidence, and no sufficient reason is advanced by the plaintiff for striking out any portion of any finding, or for adding anything thereto.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 6, 1918. Affirmed.

*Arthur M. Jackson,* of Leavenworth, *William G. Holt,* and *J. K. Cubbison,* both of Kansas City, for the appellant.

*A. E. Dempsey,* of Leavenworth, *E. S. McAnany,* and *M. L. Alden,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff seeks to compel the specific performance of a contract by which Cornelius Kelly, as alleged by the plaintiff, agreed that if she would live with Cornelius Kelly and Jane Kelly, his wife, as their daughter, all the property owned by Cornelius Kelly should be the plaintiff's, and that she would be the only heir of Cornelius Kelly, and would receive all of his property at his death. Judgment was rendered in favor of the defendants, and the plaintiff appeals. The trial court made special findings of fact and conclusions of law as follows:

"1. The plaintiff is the daughter of Jeremiah C. Denny, who died about July 12, 1869, leaving the plaintiff and her three brothers orphans, their mother having died previously. Cornelius Kelly was a sergeant in the United States Army at Fort Leavenworth, Kansas, about that time and about the year 1873 said Cornelius Kelly and his then wife, Jane Kelly, being childless, took the plaintiff and her brother, Jerry Denny, to raise. Where the plaintiff and her said brother were before being taken into the family of said Cornelius Kelly is not shown in the evidence, but in the argument of the case it was conceded that they were taken from a local orphan asylum. On what terms or conditions the plaintiff was taken into

the family of Cornelius Kelly or whether there were any conditions whatever is not shown in the evidence. However, Cornelius Kelly and his wife took the plaintiff into their home, reared her, sent her to the parochial school at Fort Leavenworth, Kansas, and later on, after they moved to the city of Leavenworth in 1889, sent her to St. Mary.'s Academy, where she graduated in the year' 1892.

"2. Cornelius Kelly and his wife, Jane Kelly, were kind to the plaintiff and referred to her as 'Katie' and 'our Katie' and sometimes as 'Katie Kelly'; but she was also known by the earlier residents of Fort Leavenworth as 'Katie Denny' and was sometimes called 'Katie Kelly' and sometimes called 'Katie Denny' and her brother was called and known as 'Jerry Denny.' The plaintiff also referred to and called Cornelius Kelly and his wife 'father' and 'mother,' and they treated her with considerable kindness and affection, which in her younger years was reciprocated by her.

"3. After retiring from the army, Cornelius Kelly and his wife moved to the city of Leavenworth, Kansas, 'the exact date not being clearly shown. The plaintiff came to Leavenworth with Mr. and Mrs. Kelly and lived with them and continued to be treated as a member of the family until about 1889, when Cornelius Kelly sent the plaintiff to St. Mary's Academy for further education. Upon her entrance into the academy she was registered as 'Katie C. Denny.' She graduated from the academy in·1892. During her attendance at the academy she made frequent visits to the home of Mr. and Mrs. Kelly and continued to treat and regard it as her home and Cornelius Kelly received and signed the reports made by the teachers on printed forms for that purpose and under the line on which his signature was to be written were the printed words 'parent or guardian.' He signed these reports but he did not write the words 'parent or guardian' or either of them, but only signed his name 'Cornelius Kelly' on the report sent him by the teachers at the academy.

"4. After her graduation she returned to the home of Mr. and Mrs. Kelly, in Leavenworth, Kansas, and remained there for several months, living with Mr. and Mrs. Kelly as a member of their family, until about 1893. Up to this time friendly and affectionate relations existed between the plaintiff and Mr. and Mrs. Kelly. She had not been required at any time to do any hard or laborious work and both Mr. and Mrs. Kelly had stated at different times that they expected to leave their property to her; that they had no one else to leave it to; that she would get all their property when they were gone—meaning when they were dead.

"5. About 1893 the plaintiff obtained employment as secretary of All Saint's Hospital, at Kansas City, Missouri, receiving good wages, where she remained for perhaps two or three years, during which time she often visited Mr. and Mrs. Kelly. She then took a course in a business school, learned stenography, and obtained employment in the office of a law firm in Kansas City, Kansas, where she remained until about 1898, when she was married to William McKeown. During her employment in this law firm in Kansas City, Kansas, she often visited Mr. and Mrs. Kelly

and their relations were friendly and affectionate. There was no objection on the part of Mr. Kelly or Mrs. Kelly to the marriage of the plaintiff to William McKeown, and after her marriage, the plaintiff and her husband visited at the home of Mr. and Mrs. Kelly, and they expressed and showed a continued friendship and affection for plaintiff and a kindly regard for her husband.

"6. After her marriage, the plaintiff removed with her husband, to Colorado, where she has since resided. In the year 1907, Mrs. Jane Kelly was taken sick. The plaintiff came from her home in Colorado and stayed with Mrs. Kelly about a week, when Mrs. Kelly seemed much better and the plaintiff returned to her home in Colorado. In 'a short time thereafter Mrs. Jane Kelly became worse and shortly died. Plaintiff returned to Leavenworth and attended her funeral and remained a few days at the Kelly home.

"At or about the time of the funeral of Mrs. Jane Kelly, some unpleasantness occurred between Cornelius Kelly and the plaintiff because of the plaintiff's interference with the funeral arrangements and this incident seems to have caused Cornelius Kelly some embarrassment with his friends and occasioned some resentment on his part towards the plaintiff.

"7. After the funeral of Mrs. Jane Kelly in June, 1907, and before her return to her home in Colorado, Cornelius Kelly gave plaintiff some money and jewelry amounting to the sum of about one thousand dollars and stated to some of his friends that he was done with her. Plaintiff returned to her home in Colorado and continued to write to Cornelius Kelly and he answered some of her letters.

"In one of his letters, dated August 9, 1907, he said, among other things, 'Made my will, did not forget you.' In another letter, dated December 12, 1910, he said, among other things, 'I deeded my property to orphan asylum and willed my other assets to you—have nothing now but my pension; it meets my wants.'

"8. Cornelius Kelly continued to reside in his home on North Eighth Street, in the City of Leavenworth, Kansas, and on the 15th day of November, 1911, he was united in marriage to Margaret Sullivan, one of the defendants in this action. On November 20, 1911, he wrote plaintiff advising her of his marriage and after that time there seems to have been little communication between him and the plaintiff.

"9. On April 27, 1915, Cornelius Kelly made and executed his last will and testament, which has been duly admitted to probate, and in which will and testament the plaintiff was willed one hundred dollars. Various other bequests were contained in said will, some for charitable and religious purposes, and the remainder of his estate was willed to his second wife, Margaret Kelly, one of the defendants in this action.

"At and before the making of his will Cornelius Kelly stated that he had never adopted the plaintiff, that he had raised and educated her and that he was under no obligations to her whatever, and that he did not wish to leave her anything in his will, but his wife, Margaret Kelly, one

of the defendants in this action, insisted that he leave her something and he therefore willed her the one hundred dollars above stated.

"10. The evidence does not prove that Cornelius Kelly or his wife, Jane Kelly, ever entered into any agreement of any kind with the plaintiff or with any other person or persons, by which there was ever any understanding or agreement of any kind or nature, that the plaintiff, under any circumstances, conditions or consideration, was to have or receive any of their property at the time of their death, or the death of either of them, and therefore the allegations in the plaintiff's petition in that regard have not been proven."

### CONCLUSION OF LAW.

"1. The prayer of the plaintiff's petition should be denied and judgment entered in favor of the defendants for costs."

1. The plaintiff presents five specifications of error; three of which are as follows:

"First. The trial court erred in not awarding plaintiff judgment for specific performance as prayed for in her amended petition.

"Third. The trial court erred in refusing to sustain plaintiff's motion to vacate and set aside the 10th finding of fact and the conclusion of law, made by the court, and to substitute therefor a different finding and conclusion, as set forth in her motion so to do.

"Fourth. The trial court erred in refusing to sustain plaintiff's motion for judgment in her behalf on the grounds set forth in her motion therefor."

The plaintiff states that "these three specifications all have to do with the 10th so-called finding and the sole conclusion of law made by the trial court," and argues that,

"The trial court evidently based its so-called 10th finding and its sole conclusion of law on the erroneous theory that plaintiff had to prove a *specific, express contract* between herself and Cornelius Kelly by direct evidence."

The plaintiff also says:

"The case is brought before this honorable court because it is evident from this 10th finding and its conclusion of law that the trial court either entirely misconceived or wholly disregarded the law of this state in cases of this character, as laid down by a long line of decisions of this court entirely in harmony with each other."

To support her contention, the plaintiff cites a number of cases decided by this court. In each of these cases a contract was clearly and definitely established.

Under her petition, it was necessary for the plaintiff to prove a contract between herself and Cornelius Kelly; but it was not necessary to prove that contract by direct evidence.

Circumstantial evidence would have been sufficient, but the contract should have been clearly and definitely established. (*Anderson v. Anderson,* 75 Kan. 117, 127, 88 Pac. 743.) The evidence, as abstracted, has been carefully examined, and no evidence is disclosed by which to establish that a contract was ever made. The tenth finding of fact was correct.

2. Another specification of error is that the trial court erred in refusing to sustain the plaintiff's motion to modify certain findings of fact. These were numbered 1 to 9, inclusive. The plaintiff says:

"A very large portion of *nine* of the *ten* findings made by the trial court was favorable to plaintiff, therefore she could not ask that the *nine* be vacated. She could only ask that they be modified so as to conform and adhere to the material evidence and testimony and that such portions of them as were not material or were not supported by material testimony, be left out of them."

It was the duty of the trial court to find the facts from the evidence introduced. The court made complete findings, and those findings were supported by the evidence. No sufficient reason is advanced by the plaintiff for striking out any portion of any finding, nor for adding anything thereto. An examination of the evidence does not disclose any such reason. The plaintiff's motion was properly denied.

The judgment is affirmed.